UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISON

SARAH E. MCINTOSH

    Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

Case No. 4:21-cv-0377-NKL

## ORDER

Sarah McIntosh appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Doc. 1 (Social Security Complaint); Doc. 14 (McIntosh's Social Security Brief). McIntosh argues that the Commissioner's determination that McIntosh was no longer disabled was not supported by substantial evidence. For the reasons stated below, the decision is remanded for the award of benefits.

### I. BACKGROUND

#### A. Medical History

McIntosh started having frequent headaches in her early teens. Tr. 697. In 2002, McIntosh was diagnosed with a level 1 brain tumor in her brain stem and hydrocephalus. Tr. 667. The tumor is inoperable due to its location, but a shunt was placed to alleviate the symptoms. Tr. 697. The shunt failed, and a shunt revision surgery was performed in 2003. *Id.* McIntosh also underwent six weeks of radiation treatment in 2005. *Id.* The tumor is stable and has not measurably grown since 2010. Tr. 544-45, 554-555, 641-42. In April and May of 2003, Doctors Maria Korth and

Kristi Morehead performed a barrage of psychological tests on McIntosh that showed her processing speed was well below average and her abstract reasoning was significantly impaired. Tr. 483-92. They recommended McIntosh be evaluated for special education services, given extra time on tests, and her assignment lengths decreased. Tr. 486.

### B. Previous Disability Determinations

On May 1, 2005, McIntosh was found disabled, with a disability onset date of January 1, 2004, because her brain tumor caused headaches, seizures, and cognitive disorders. Tr. 693. On June 24, 2014, the Commissioner determined that McIntosh's disability ended on June 1, 2014, because her tumor was stable and had not caused any severe limitations. Tr. 116-23. McIntosh requested that an Administrative Law Judge ("ALJ") review the decision. Tr. 129.

### C. The ALJ's Decision[1]

The ALJ determined that McIntosh had never engaged in substantial gainful activity. Tr. 693-94. The ALJ found McIntosh has the following severe impairments: tectal glioma (brain tumor) with hydrocephalus status post ventriculoperitoneal shunt placement, a cognitive disorder, anxiety, and major depressive disorder. Tr. 694-95. Additionally, McIntosh suffered from foot pain, foot pronation syndrome, and obesity, but these impairments were not severe. *Id.*

The ALJ found that McIntosh's condition had improved since the original disability determination, and the improvement was related to her ability to work. Consequently, the ALJ determined that McIntosh had the residual functional capacity ("RFC") to perform the following

---

[1] This is the third time the ALJ has determined that McIntosh was no longer disabled. The Appeals Council remanded the ALJ's original decision for resolution of various issues. Tr. 146-48. This Court remanded the ALJ's second decision because the ALJ improperly gave Dr. Niileksela and Ms. Sumpter's opinion little weight because the opinion did not mirror the function-by-function analysis used by the Social Security Administration. Tr. 801.

after June 1, 2014:

> lift and carry ten pounds frequently and twenty pounds occasionally, sit for six hours out of an eight-hour workday, stand for six hours out of an eight-hour workday, and walk for six hours out of an eight-hour workday. She could occasionally balance, stoop, and climb ramps and stairs, but she should never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to unprotected heights, moving mechanical parts, extreme cold, extreme heat, or vibration. She is able to perform simple, routine, and repetitive tasks, but not at a production rate pace.

Tr. 696. The ALJ asked the Vocational Expert ("VE") whether "jobs existed in the national economy for an individual with [McIntosh's] age, education, work experience, and RFC." Tr. 750-51. The VE testified that work existed in the national economy for someone with McIntosh's characteristics. *Id*. Based on the VE's testimony, the ALJ determined that McIntosh's disability ceased on June 1, 2014. The Appeals Council affirmed the ALJ's decision, and McIntosh appeals the ALJ's decision to this Court.

## II. LEGAL STANDARD

"The Court must affirm the Commissioner's denial of social security benefits so long as 'there was no legal error' and 'the findings of fact are supported by substantial evidence on the record as a whole.'" *Alhilfy v. Saul*, No. 4:20-CV-00235-NKL, 2021 WL 462122, at *2 (W.D. Mo. Feb. 9, 2021) (quoting *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016)). "'Substantial evidence' is less than a preponderance but enough that a reasonable mind could find the evidence adequate to support the ALJ's conclusion." *Id.* (citing *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015)). Additionally, since McIntosh was previously found disabled, the burden is on the Commissioner to show that McIntosh is no longer disabled due to her medical improvement. *Nelson v. Sullivan*, 946 F.2d 1314, 1315 (8th Cir. 1991).

## III. DISCUSSION

### A. Whether Substantial Evidence Supports the ALJ's Rejection of Ms. Sumpter and Dr. Niileksela's Opinion Regarding McIntosh's Processing Speed Limitation

McIntosh argues that the ALJ's rejection of Ms. Sumpter and Dr. Niileksela's opinion that McIntosh's processing speed was impaired was not supported by substantial evidence. When evaluating the weight to be given a medical opinion, the ALJ must "apply the following factors: (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, 'particularly medical signs and laboratory findings,' supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors 'which tend to support or contradict the opinion.'" *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (citing 20 C.F.R. § 404.1527(d)).

Ms. Sumpter and Dr. Niileksela performed a psychoeducational assessment to determine if McIntosh's cognitive abilities had improved since 2003. Tr. 660-75. From January 31, 2017, to April 11, 2017, they examined McIntosh during five different two-hour sessions. They performed five different psychological tests that compared McIntosh's cognitive ability to her peers.[2] One test showed McIntosh's general intellectual ability was higher than only 17% of her peers. Tr. 662. Furthermore, the test showed McIntosh's processing speed score—defined as the ability to perform simple tasks quickly—was in the "Very Low range" and higher than only 1% of her peers. *Id.*[3]

---

[2] Ms. Sumpter and Dr. Niileksela provided the test results in an appendix. Tr. 671-75.

[3] The processing speed test had two components. McIntosh scored in the bottom 7% of her peers on a "Letter Pattern Matching" test and in the bottom 2% of her peers on a "Pair Cancellation" test. Tr. 672.

Ms. Sumpter and Dr. Niileksela performed follow-up tests that showed McIntosh's processing speed score was in the "Low Average range" and higher than 23% of her peers. Tr. 663.[4] Additionally, in a test of her academic ability, McIntosh did better on portions of the assessment that were not timed. Tr. 665. Ms. Sumpter and Dr. Niileksela concluded based on the entirety of their findings that McIntosh's processing speed was in the "Very Low range," had not improved since 2003, was an area of concern, and her processing speed "appear[s] to have a significant impact on her daily living skills, especially those related to employment." Tr. 668-69.

The ALJ gave the processing speed limitation only "some weight" because (1) Ms. Sumpter and Dr. Niileksela interacted with McIntosh five times; (2) the opinions were contradicted by McIntosh's daily activities; (3) McIntosh had earned an associate's degree; and (4) the opinion was contradicted by other psychological evaluations. Tr. 705. As discussed below, none of the listed reasons, alone or in combination, constitute substantial evidence that supports the ALJ's determination.

1. **Number of Evaluations**

McIntosh argues that the ALJ cannot discredit Ms. Sumpter and Dr. Niileksela's opinion because they evaluated McIntosh only five times while giving "great weight" to the opinions of multiple doctors who had never examined McIntosh. The ALJ's decision to discredit Ms. Sumpter and Dr. Niileksela's opinion because of the number of evaluations was not supported by substantial evidence for two reasons. First, the ALJ must be consistent with how he treats opinion evidence. *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004) (noting that the ALJ may not "pick and choose only evidence in the record buttressing his conclusion."); *Murphy*

---

[4] The processing speed test had two different components. McIntosh scored in the bottom 16% of her peers on a "Symbol Search" test and in the bottom 37% of her peers on a "Coding" test. Tr. 672.

*v. Berryhill*, 2018 WL 6610287, at *4 (N.D. Ill. Nov. 28, 2018) ("[I]t is important that ALJs employ the 'same metrics' and the 'same level of rigor' in evaluating multiple opinions."). Since the ALJ gave the opinions of multiple other doctors who had never seen or examined McIntosh "great weight" (Tr. 701-02 (ALJ crediting opinions of Dr. Wilkinson, Dr. Rosenshield, and Dr. Schulman, who never examined McIntosh); Tr. 702-03 (same with the opinion of Dr. Tawadros)), the ALJ's decision to give Ms. Sumpter and Dr. Niileksela's opinion only "some weight" cannot properly be based on the limited number of evaluations. *See Holdeman v. Kijakazi,* No. 20-CV-729-NKL, 2021 WL 6062368, at *5 (W.D. Mo. Dec. 22, 2021) (holding the ALJ must evaluate medical opinions consistently).

Second, while the number of evaluations a medical source performs can be relevant to the weight of their opinion, the social security regulations do not require a doctor to evaluate a claimant a certain number of times before their opinion can be adopted. *See* 20 C.F.R. § 404.1527.

### 2. Daily Activities and Associate's Degree

An ALJ may discredit a medical opinion when it conflicts with a claimant's daily activities. *Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014). McIntosh's sister reported that in 2014 McIntosh could cook frozen foods, perform light cleaning, and take care of her finances. Tr. 379-89. Additionally, McIntosh stated she can dress and bathe herself, drive, shop, cook, and clean the dishes. Tr. 515. However, McIntosh's ability to perform simple tasks at her own pace over the course of an entire day does not show that she could perform similarly simple tasks at the rate that would be required for her to maintain employment. *Nowling v. Colvin*, 813 F.3d 1110, 1122 (8th Cir. 2016) ("Participation in activities with family or activities at home and at 'your own pace' may not reflect an ability to perform at work."); *Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter . . . ."); *Draper v.*

*Barnhart,* 425 F.3d 1127, 1131 (8th Cir. 2005) ("[T]o find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.").

Relatedly, the ALJ stated that McIntosh's ability to earn an associate's degree contradicts the allegation that her processing speed significantly impacts her ability to work. However, when earning her associate's degree, McIntosh received accommodations that accounted for her processing speed limitation—notes were provided to her, and she was given extra time to complete tests. Tr. 456. Even then, McIntosh struggled to complete assignments on time. *Id.* When the accommodations were no longer provided, McIntosh was unable to complete additional college classes. Tr. 661.[5] McIntosh's inability to take her own notes or complete tests without extra time does not justify discrediting Dr. Niileksela and Ms. Sumpter's opinion that McIntosh's processing speed impairs her ability to work.

The Commissioner cites to *Tindell v. Barnhart*, 444 F.3d 1002, 1004 (8th Cir. 2006), where the Eighth Circuit held that a claimant attending college classes supported the ALJ's determination that the claimant was not disabled. However, *Tindell* is distinguishable because there is no discussion of claimant needing accommodations.

### 3. Opinions of Dr. Kadar and Dr. Mintz

The ALJ discredited McIntosh's processing speed limitation because during Dr. Mintz's 2014 psychological consultative evaluation and Dr. Kadar's 2018 examination, McIntosh

---

[5] The ALJ was required to consider the need for these accommodations. *Nelson v. Saul*, 413 F. Supp. 3d 886, 915-16 (E.D. Mo. 2019) (stating an ALJ must consider the entirety of the record and cannot pick and choose evidence to buttress his conclusions) (collecting sources).

"displayed good cognitive functioning and intact memory and attention." Tr. 705. When two medical opinions contradict, the ALJ is entitled to resolve the contradiction by discrediting the opinion he finds less persuasive. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence.'" (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000))). The Court will not disturb the ALJ's decision if it is "supported by good reasons and substantial evidence." *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015) (quoting *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)).

Dr. Mintz performed a mental status examination of McIntosh on June 3, 2014. Tr. 514. He determined that McIntosh appeared to function within the average intellectual range; she displayed no indications of a cognitive disorder; she could make simple comparisons; and her immediate attention span capability appeared intact because she could perform basic addition, subtraction, and multiplication and recite the alphabet. Tr. 515-16. Dr. Mintz determined McIntosh has no mental impairments outside of her generalized anxiety disorder with panic attack symptoms.

Dr. Kadar performed an orthopedic evaluation of McIntosh in September of 2018. Tr. 682. During that evaluation he noted that McIntosh appeared anxious, her recent and remote memory was intact, and she had good insight and cognitive function. Tr. 682-83. It is unclear how Dr. Kadar came to his conclusions.

The ALJ's decision to discredit Dr. Niileksela and Ms. Sumpter's opinion based on Dr. Mintz's, and Dr. Kadar's opinions is not supported by substantial evidence because substantial evidence does not support the ALJ's conclusion that Dr. Mintz and Dr. Kadar's opinion were worthy of more weight under the social security regulations.

Dr. Niileksela and Ms. Sumpter conducted multiple objective tests over the course of numerous evaluations that examined McIntosh's processing speed in no less than four ways and compared her results to her peers. Their testing is more thorough than Dr. Mintz's single evaluation where he subjectively observed McIntosh performing simple arithmetic and reciting the alphabet. Furthermore, it is unclear what testing Dr. Kadar performed during his physical examination of McIntosh. Thus, Dr. Niileksela and Ms. Sumpter's opinion regarding McIntosh's processing speed was better supported. 20 C.F.R. § 404.1527(c)(3) ("[T]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); *Nishke v. Astrue*, 878 F. Supp. 2d 958, 982, 984 (E.D. Mo. 2012) (holding it was proper for ALJ to credit opinion based upon psychological testing that was explained in a comprehensive report rather than two opinions that constituted conclusory checklist forms).

Second, Dr. Niileksela and Ms. Sumpter's opinion is more consistent with the record. The only other evaluation of McIntosh's processing speed is the 2003 evaluation by Dr. Maria Korth and Dr. Kristi Morehead that similarly found that McIntosh's processing speed was "well below average." Tr. 484-85, 487, 489 (finding that McIntosh's processing speed was in the bottom 4th percentile). Additionally, McIntosh's inability to successfully attend college classes without accommodations for her processing speed shows that her processing speed impairs her ability to work. *See supra* Section III.A.2.; 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

### IV.    Whether Benefits Should Be Awarded on Remand

McIntosh argues that the ALJ should be ordered to grant benefits on remand. A court should remand with an instruction to grant benefits when the record "overwhelmingly supports" a

finding of disability, and "further hearings would merely delay the receipt of benefits." *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009) (citation omitted).

As discussed above, the weight of the evidence, including the well-founded opinion of Dr. Niileksela and Ms. Sumpter, other medical evidence, and McIntosh's educational history, indicate that McIntosh's processing speed was in the "very low range." Given the VE's testimony on the record that there would be no work available for one with a processing speed that was "lacking" or in the "very low range" (Tr. 753), the record overwhelmingly supports a finding of disability. *See Jackson v. Bowen*, 873 F.2d 1111, 1115 (8th Cir. 1989) ("The vocational expert testified that if Jackson's complaints were credible, then Jackson would not be able to perform any work. Because the district judge found that the complaints were credible, he could grant benefits based on the testimony of the expert."); *Crow v. Berryhill,* No. 4:17-CV-2605 NAB, 2019 WL 1001211, at *5 (E.D. Mo. Mar. 1, 2019) (awarding benefits when the VE's response to a hypothetical established that no work would be available); *Meinders v. Barnhart*, 195 F. Supp. 2d 1136, 1145 (S.D. Iowa 2002) (same).

## V. CONCLUSION

For the reasons discussed above, the ALJ's decision is REVERSED and the case is REMANDED with an instruction to award benefits.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 2, 2022
Jefferson City, Missouri